COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia

BRIAN GRAY

                                                          MEMORANDUM OPINION[*]
v.       Record No. 2053-11-2                     BY JUDGE D. ARTHUR KELSEY
                                                            MAY 29, 2012
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                            Timothy J. Hauler, Judge

          Aubrey R. Bowles, IV (Bowles and Bowles, on brief), for
          appellant.

          Josephine F. Whalen, Assistant Attorney General II (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


      The trial court convicted Brian Gray of grand larceny.  Gray appeals his conviction,

claiming the evidence was insufficient to prove his guilt.  We affirm.

                                            I.

      On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

      So viewed, the evidence showed Gray walked into a Wal-Mart store pushing an empty

shopping cart on October 7, 2009.  Nine minutes later, he left the store with the shopping cart

laden with various items of Wal-Mart merchandise:  a ten-piece dish set and two sets of bed-in-a-

_____
      [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

bag packages consisting of comforters and matching sheets. The items were not in Wal-Mart plastic bags. As Gray exited the store, a Wal-Mart door greeter asked to see his receipt. Gray ignored the request and walked out of the store.

The door greeter immediately alerted the store manager, who went out to the parking lot as Gray drove away. Following a call from the store manager, the police stopped Gray's vehicle about five miles from the store. The officers found the Wal-Mart merchandise.[1] None of the recovered items were marked with Wal-Mart return stickers. Gray claimed "he had purchased the items at the Wal-Mart and that he had a receipt on him." App. at 22, 24. Gray, however, could not produce the receipt. Nor did a search of Gray or his vehicle result in finding a Wal-Mart receipt matching the merchandise in Gray's possession. The stolen items had a value exceeding $200.

The store manager later reviewed the store's video surveillance tapes. They did not show Gray at any of the cashier stations, either paying for the items or not paying for the items. By "just looking at that tape," the store manager explained, one could not exclude the possibility that Gray "could have" paid for the items. App. at 19.

At trial, Gray took the witness stand in his own defense. His prior criminal record included nine felonies and six misdemeanors involving lying, cheating, or stealing. Gray testified he purchased the items and showed his receipt to the Wal-Mart door greeter. He denied being searched by the officer but, nevertheless, claimed he "had the receipt in [his] pocket" when the police officers stopped the vehicle. App. at 50. When asked "Where is the receipt?" Gray answered, "I guess it's at home." Id. at 52. When asked why he did not have someone bring the

---

[1] The officers also found a new Wal-Mart vacuum cleaner, which Gray claimed a friend had brought into the store to inquire about a possible exchange. We need not address whether the vacuum cleaner was stolen by Gray because the items in his cart, not including the vacuum cleaner, exceeded $200 in value.

receipt to court to prove his innocence, Gray changed his story: "The police took all of my receipts out of my home." Id. Disbelieving Gray's testimony, the trial court convicted him of grand larceny in violation of Code § 18.2-95.

II.

On appeal, Gray contends the evidence failed to prove his guilt beyond a reasonable doubt. We disagree.

An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)); see also Cavazos v. Smith, 132 S. Ct. 2, 3 (2011) (reaffirming Jackson standard).[2] "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Williams, 278 Va. at 193, 677 S.E.2d at 280 (quoting Jackson, 443 U.S. at 319).

This deferential appellate standard "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010). Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004) (citation omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

---

[2] Accord Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010); Prieto v. Commonwealth, 278 Va. 366, 399, 682 S.E.2d 910, 927 (2009); McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

In this case, the trial court found Gray guilty of grand larceny. "In Virginia, larceny is a common law crime." McEachern v. Commonwealth, 52 Va. App. 679, 684, 667 S.E.2d 343, 345 (2008) (citation omitted). Larcenous intent "may, and often must, be inferred from that person's conduct and statements." Id. (citations omitted). An individual commits larceny by wrongfully taking the property of another "without his permission and with the intent to permanently deprive the owner of that property." Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000); see also Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763-64 (2001).

The evidence in this case provides ample support for Gray's grand larceny conviction. It took only nine minutes for Gray to enter Wal-Mart, fill his shopping cart with merchandise, and walk out of the store. When asked by the door greeter to present his receipt, Gray refused to do so. When stopped by the police and accused of stealing the merchandise, Gray claimed he had the receipt but failed to produce it. When asked at trial where the receipt was, Gray first guessed it was "at home," but when questioned why he did not bring it to trial, Gray changed his story and claimed the police confiscated it from his home. App. at 52. An innocent shopper would have produced the receipt, if he still had it, on each of these three occasions. Only a thief, like Gray, would take the stand to maintain his innocence without once producing the receipt or offering any plausible explanation for failing to do so.[3]

Gray claims on appeal that the trial court should have believed his testimony that he purchased the merchandise but, for whatever reason, simply could not produce the receipt. Even if not "*inherently* incredible," however, a criminal defendant's exculpatory version of events

---

[3] In "connection with the other facts proved in the case," the trial court was entitled to consider Gray's "failure or neglect . . . to produce evidence within his power" as further proof of his guilt. Pollino v. Commonwealth, 42 Va. App. 243, 251, 590 S.E.2d 621, 625 (2004) (quoting Robinson v. Commonwealth, 165 Va. 876, 880, 183 S.E. 254, 256 (1936)). See also Taylor v. Commonwealth, 90 Va. 109, 119, 17 S.E. 812, 816 (1893); Cooper v. Commonwealth, 54 Va. App. 558, 575 n.7, 680 S.E.2d 361, 370 n.7 (2009).

need not be accepted by the factfinder. Tizon v. Commonwealth, 60 Va. App. 1, 12-13, 723 S.E.2d 260, 265 (2012) (emphasis in original) (quoting Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980)). To be sure, a trial court is at liberty to discount a defendant's "self-serving statements as little more than lying to conceal his guilt," Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010) (quoting Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008)), and could treat such prevarications as "affirmative evidence of guilt," id. (quoting Coleman, 52 Va. App. at 25, 660 S.E.2d at 690, in turn quoting Wright v. West, 505 U.S. 277, 296 (1992)).[4] This conclusion is particularly secure where, as here, the criminal defendant has more than fifteen prior felony and misdemeanor convictions implicating his truthfulness.

Gray also relies on the store manager's concession that "just looking at the tape" leaves open the possibility that Gray purchased the items. This unremarkable observation, however, does not warrant an appellate acquittal. In context, the store manager's statement merely acknowledges the video surveillance tape did not necessarily *disprove* the theft. Relying on his memory (the tape not having been offered into evidence), the store manager recalled the tape did not show Gray either "paying for any of the items" or, for that matter, walking past a cashier's station without paying for them. App. at 14. No matter what the surveillance tape did not show, however, other evidence in the case did show that Gray stole the Wal-Mart merchandise.

---

[4] This principle naturally follows from the broader observation that "whenever a witness testifies, his or her credibility becomes an issue." Hughes v. Commonwealth, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002) (citation omitted); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (recognizing the "general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'" (quoting Wright, 505 U.S. at 296)); Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004); Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004); Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002); Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008); Thomas v. Commonwealth, 44 Va. App. 741, 755 n.5, 607 S.E.2d 738, 744 n.5, adopted upon reh'g en banc, 45 Va. App. 811,

Due process required only that the trial court rationally conclude the evidence proved Gray's guilt beyond a reasonable doubt. This essential safeguard of liberty, as stringent as it may be, does not contradict the axiom that "[e]vidence is seldom sufficient to establish any fact as demonstrated and beyond all doubt." Harris v. Commonwealth, 206 Va. 882, 887, 147 S.E.2d 88, 92 (1966) (quoting Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)). "'Anything is possible,' as Judge Posner has observed, 'but a merely metaphysical doubt . . . is not a reasonable doubt for purposes of the criminal law. If it were, no one could be convicted.'" Joyce v. Commonwealth, 56 Va. App. 646, 666, 696 S.E.2d 237, 247 (2010) (quoting United States v. Ytem, 255 F.3d 394, 397 (7th Cir. 2001)). In this area of law, as in so many, "[c]ommon sense and the common experience of men are our best guides." Gilland v. Commonwealth, 184 Va. 223, 232, 35 S.E.2d 130, 133 (1945) (citation omitted).

## III.

Because the evidence in this case was sufficient for a rational factfinder to conclude beyond a reasonable doubt that Gray committed grand larceny, we affirm his conviction.

Affirmed.

---

613 S.E.2d 870 (2005); Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003).